# EXHIBIT D

# EXHIBIT D

Electronically FILED by Superior Court of California, County of Los Angeles on 08/04/2022 03:56 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Bolden,Deputy Clerk

Case 1:22-bk-11191-VK   Doc 18-4   Filed 12/27/22   Entered 12/27/22 17:37:29   Desc
Exhibit D - Rucker Lawsuit against Bank of NY   Page 2 of 43

1  TROUTMAN PEPPER
   HAMILTON SANDERS LLP
2  Jared D. Bissell, Bar No. 272687
   jared.bissell@troutman.com
3  11682 El Camino Real, Suite 400
   San Diego, CA 92130-2092
4  Telephone:   858.509.6000
   Facsimile:   858.509.6040
5
   Attorneys for Defendants
6  The Bank of New York Mellon F/K/A The
   Bank of New York As Successor In Interest to
7  JP Morgan Chase Bank, N.A. As Trustee for
   Structured Asset Mortgage Investments II Inc.
8  Mortgage Pass-Through Certificates Series
   2004-AR5; Nationstar Mortgage LLC dba Mr.
9  Cooper (*erroneously sued as Mr. Cooper fka
   Nationstar*)
10

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                      COUNTY OF LOS ANGELES

13

14  MICHELE C. RIORDAN RUCKER, an          Case No. 20STCV03102
    individual,
15                                         [Assigned for All Purposes to Hon. Holly J. Fujie;
                    Plaintiff,             Dept. 56]
16
          v.
17
    THE BANK OF NEW YORK MELLON
18  F/K/A THE BANK OF NEW YORK AS          **NOTICE OF ENTRY OF JUDGMENT**
    SUCCESSOR IN INTEREST TO JP
19  MORGAN CHASE BANK, N.A. AS
    TRUSTEE FOR STRUCTURED ASSET
20  MORTGAGE INVESTMENTS II INC.
    MORTGAGE PASS-THROUGH
21  CERTIFICATES SERIES 2004-ARS, ITS
    ASSIGNEES AND/OR SUCCESSORS;
22  MR. COOPER F/K/A NATIONSTAR; and
    DOES 1 through 50, inclusive,
23
                    Defendants.
24

25

26

27

28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on June 22, 2022, the Court held a hearing for, and granted, the Motion for Summary Judgment filed by Defendants; The Bank of New York Mellon F/K/A The Bank of New York As Successor in Interest to JP Morgan Chase Bank, N.A. As Trustee for Structured Asset Mortgage Investments II Inc. Mortgage Pass-Through Certificates Series 2004-AR5 ("BONY"); Nationstar Mortgage LLC dba Mr. Cooper (*erroneously sued as Mr. Cooper fka Nationstar*) ("Nationstar;" collectively, with BONY, "Defendants"). *See* Exhibit 1.

On July 29, 2022, the Court entered judgment in Defendants' favor, holding that Plaintiff take nothing, and this action be dismissed on the merits WITH PREJUDICE, and that Defendants recover their costs. *See* Exhibit 2.

Dated: August 4, 2022

TROUTMAN PEPPER
HAMILTON SANDERS LLP

Jared D. Bissell

Attorneys for Defendants
The Bank of New York Mellon F/K/A The Bank of New York As Successor In Interest to JP Morgan Chase Bank, N.A. As Trustee for Structured Asset Mortgage Investments II Inc. Mortgage Pass-Through Certificates Series 2004-AR5; Nationstar Mortgage LLC dba Mr. Cooper (*erroneously sued as Mr. Cooper fka Nationstar*)

REPLY IN SUPPORT OF MOTION

**PROOF OF SERVICE**

**STATE OF OR, COUNTY OF MULTNOMAH**

     I am employed in the County of Multnomah, State of OR.  I am over the age of 18 and not a party to the within action; my business address is 100 Main Street, Suite 1000, Portland, OR 97204.

     On August 4, 2022, I served the following document(s) described as:

**NOTICE OF ENTRY OF JUDGMENT**

☐    **BY MAIL**: As follows: I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at San Diego, CA, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒    **BY OVERNIGHT MAIL**: As follows: I am readily familiar with the firm's practice of collection and processing correspondence for overnight mailing. Under that practice, it would be deposited with overnight mail on that same day prepaid at San Diego, CA in the ordinary course of business.

☒    **BY ELECTRONIC MAIL** (CRC 2.251): Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses, as last given or submitted on any document which he or she has filed in the case, listed on the attached service list.

| | |
|---|---|
| Michele C. Riordan Rucker<br>22817 Ventura Boulevard<br>Woodland Hills, CA 91364<br>sruckeresq@gmail.com<br><br>Plaintiff in pro per | |

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

     Executed on August 4, 2022, at Portland, OR.

_____
                 Aimée Davis

TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

- 3 -

128555063v1

# EXHIBIT 1

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Stanley Mosk Courthouse, Department 56

**20STCV03102**                                                                                    June 22, 2022
**MICHELE C. RIORDAN RUCKER vs MR. COOPER F/K/A**                               8:30 AM
**NATIONSTAR, et al.**

Judge: Honorable Holly J. Fujie                     CSR: None
Judicial Assistant: O.Chavez                        ERM: None
Courtroom Assistant: B. Chavez                      Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s): Jared Daniel Bissell by LACC

**NATURE OF PROCEEDINGS:** Hearing on Motion for Summary Judgment; Hearing on
Joinder to Motion for Summary Judgment / Adjudication

The matter is called for hearing.

Counsel appearing submits to the Court's tentative ruling which becomes the order of the Court.

The Motion for Summary Judgment filed by The Bank of New York Mellon, Mr. Cooper on
06/07/2021 is Granted in Part.

MOVING PARTY: Defendants The Bank of New York Mellon ("BONY") and Nationstar
Mortgage LLC ("Nationstar") (collectively, "Moving Defendants")

The Court has considered the moving papers. No opposition was filed. Any opposition papers
were required to have been filed and served at least 14 days before the hearing under California
Code of Civil Procedure ("CCP") section 437c, subdivision (b)(2).

BACKGROUND

This action arises out of the foreclosure of Plaintiff's real property (the "Property"). On January
24, 2020, Plaintiff filed a complaint (the "Complaint"): (1) seeking to set aside the foreclosure
sale; and alleging (2) negligence per se; (3) intentional misrepresentation; (4) breach of contract;
(5) breach of the implied covenant of good faith and fair dealing; (6) violation of California
Business and Professions Code section 17200 et seq.; and (7) conversion.

The Complaint alleges that: Plaintiff was deprived of her reinstatement rights before the Property
was sold in a foreclosure sale (Complaint ¶ 8); Plaintiff secured her purchase of the Property
with a loan (the "Loan") secured by two deeds of trust (the "DOT") originated by Countrywide

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 56

**20STCV03102**                                                                    June 22, 2022
**MICHELE C. RIORDAN RUCKER vs MR. COOPER F/K/A**                                         8:30 AM
**NATIONSTAR, et al.**

Judge: Honorable Holly J. Fujie            CSR: None
Judicial Assistant: O.Chavez               ERM: None
Courtroom Assistant: B. Chavez             Deputy Sheriff: None

Mortgage ("Countrywide") (Complaint ¶ 9); sometime in or around 2008, while Plaintiff was in the process of a loan modification with Countrywide, Bank of America became the successor-in-interest to Countrywide (Complaint ¶ 10); Plaintiff was promised a single point of contact ("SPOC"), which did not occur (id.); and sometime in 2013, Nationstar became the successor-in-interest to Bank of America. (Id.)

Plaintiff also alleges the following: that she spent years trying to resolve issues with the DOT (see Complaint ¶¶ 10-11); Plaintiff requested accountings, tried to make payments, and contested charges (see Complaint ¶ 11); although Plaintiff believes she received a Notice of Default ("NOD") in 2008, she did not receive a NOD in 2018 or 2019 (Complaint ¶ 12); among the issues with the Loan concerned an insurance check in the amount of $181,000 for damages sustained in a 2008 fire, which were never accounted for or applied to the Loan. (Complaint ¶ 15.)

Plaintiff alleges that: in June 2019, Plaintiff's husband and authorized representative Scott Rucker ("Mr. Rucker") called for an update regarding Plaintiff's account wand was informed that a trustee's sale was scheduled for July 17, 2019 (Complaint ¶ 19); and on June 4, 2019, Plaintiff was informed in writing that the foreclosure proceeding was on hold as of that date. (Complaint ¶ 18.)

The Complaint alleges that Mr. Rucker repeatedly inquired about the reinstatement amount, which was not provided until July 15, 2019 (Complaint ¶ 17); when Plaintiff was provided with the reinstatement amount, she learned that the foreclosure sale was in fact proceeding on July 17, 2019 despite the earlier representation that it was on hold (Complaint ¶ 18); and Plaintiff attempted to transfer the money on July 15, 2019 to reinstate the loan, but the funds were not accepted and the foreclosure sale proceeded. (Complaint ¶ 19.)

On June 4, 2021, Moving Defendants filed a motion for summary judgment/adjudication (the "Motion") to each cause of action in the Complaint on the grounds that there are no triable issues of material fact as to any claim, entitling Moving Defendants to judgment as a matter of law.

REQUEST FOR JUDICIAL NOTICE

Moving Defendants' Request for Judicial Notice is GRANTED.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Stanley Mosk Courthouse, Department 56

20STCV03102                                                          June 22, 2022
**MICHELE C. RIORDAN RUCKER vs MR. COOPER F/K/A**                    8:30 AM
**NATIONSTAR, et al.**

| | |
|---|---|
| Judge: Honorable Holly J. Fujie | CSR: None |
| Judicial Assistant: O.Chavez | ERM: None |
| Courtroom Assistant: B. Chavez | Deputy Sheriff: None |

DISCUSSION

The function of a motion for summary judgment or adjudication is to allow a determination as to whether an opposing party cannot show evidentiary support for a pleading or claim and to enable an order of summary dismissal without the need for trial. (Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 843.) CCP section 437c, subdivision (c) requires the judge to grant summary judgment if all the evidence submitted and all inferences reasonably deducible from the evidence and uncontradicted by other inferences or evidence show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Adler v. Manor Healthcare Corp. (1992) 7 Cal.App.4th 1110, 1119.)

As to each claim as framed by the complaint, the defendant moving for summary judgment must satisfy the initial burden of proof by presenting facts to negate an essential element, or to establish a defense. (CCP § 437c, subd. (p)(2); Scalf v. D. B. Log Homes, Inc. (2005) 128 Cal.App.4th 1510, 1520.) Courts liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party. (Dore v. Arnold Worldwide, Inc. (2006) 39 Cal.4th 384, 389.)

Once the defendant has met its burden, the burden shifts to the opposing party to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. To establish a triable issue of material fact, the party opposing the motion must produce substantial responsive evidence. (Sangster v. Paetkau (1998) 68 Cal.App.4th 151, 166.)

Moving Defendants' Evidence

On June 30, 2004, Plaintiff and Timothy P. Murray ("Murray"), as joint tenants, obtained the Loan in the amount of $725,000 from Countrywide. (Separate Statement of Undisputed Material Facts ("UMF") 1; Declaration of A.J. Loll ("Loll Decl.") ¶ 6, Exhibit A.) In addition, Plaintiff and Murray executed a promissory note (the "Note") which was secured by a DOT on the Property. (UMF 1; Loll Decl. ¶ 7, Exhibit B.) The DOT identified Plaintiff and Murray as the borrowers, Countrywide as the lender, CTC Real Estate Services as the trustee, and Mortgage Electronic Registration Systems, Inc. as the beneficiary under the DOT and acting solely as a nominee for the lender's successors and assigns. (See id.) Nationstar became the servicer of the Loan on July 1, 2013. (UMF 13, Loll Decl. ¶ 18, Exhibit M.)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 56

20STCV03102                                                                          June 22, 2022
**MICHELE C. RIORDAN RUCKER vs MR. COOPER F/K/A**                                      8:30 AM
**NATIONSTAR, et al.**

Judge: Honorable Holly J. Fujie                    CSR: None
Judicial Assistant: O.Chavez                       ERM: None
Courtroom Assistant: B. Chavez                     Deputy Sheriff: None

On April 28, 2017, an NOD was recorded. (UMF 17, Loll Decl. ¶ 22, Exhibit Q.) On April 10,
2019, a notice of trustee's sale ("NOTS") was recorded, which set a foreclosure sale date on May
8, 2019. (UMF 19, Loll Decl. ¶ 24, Exhibit S.) Also on April 10, 2019, a substitution of trustee
("SOT") was recorded, substituting BONY as Trustee under the DOT. (UMF 20; Loll Decl. ¶ 25,
Exhibit T.) Nationstar communicated with Plaintiff and Mr. Rucker prior to the sale and agreed
to postpone the May 8, 2019 sale date to allow them extra time to reinstate the Loan. (See UMF
24-25.) By at least July 12, 2019, Plaintiff had been informed that the foreclosure sale would go
forward on July 17, 2019 and that the sum of $539,169.52 had to be received no later than July
16, 2019 to avoid foreclosure. (Loll Decl., Exh. W, p. 131.) On July 15, 2019, Nationstar sent
Mr. Rucker an email that addressed all of the allegations of misconduct made by Plaintiff
regarding the loan. (Id. at p. 132.) On July 16, 2019, Nationstar spoke with Mr. Rucker and
explained that the foreclosure would go forward as scheduled and he stated that while he was
disappointed with that decision he "will pay to have foreclosure stopped." (Id. at p. 135.)
Nationstar informed Mr. Rucker that he had until 3 pm, CST to make the transfer and he stated
that he was leaving to "go make payment." (Id.) Later that day, Mr. Rucker told Nationstar that
"he is having issues sending a wire" but Nationstar noted: "[h]is story didn t [sic] add up." (Id.)
Mr. Rucker then informed Nationstar that he had a certified check from his bank and then had
gone to Wells Fargo Bank to wire the funds, which "didn t [sic] make sense." (Id.) Nationstar
asked Mr. Rucker why the bank that issued the certified check did not wire the funds and he
stated that it did not wire funds. (Id.) Nationwide then sent an email to Mr. Rucker telling him to
send a picture of the certified check, which he later said he did not receive. (Id.) Mr. Rucker then
stated that he was still at the bank and when asked why he was still at the issuing bank when it
had already issued the certified check and he "just laughed." (Id.) Nationwide noted that if Mr.
Rucker had sent it a picture of a certified check in the amount of $539,169.54 within one hour
then they would postpone the sale. (Id. at 135-136) Later that day, Nationstar spoke to Mr.
Rucker, who requested that the foreclosure sale be put on hold because the cashier's check was
expired. (Id. at p. 136.) Nationstar then spoke to Mr. Rucker who now stated that he "has $1
million in cert check dated dec 2013 that is stale so onhold [sic] and needs tomorrows fc sale
date." (Id. at pp. 136-137.) Mr. Rucker was advised to "obtain funds and wire funds tomorrow
before sale date and send proof." (Id. at p. 137.) Nationwide informed Mr. Rucker that
postponement even under those circumstances was not guaranteed. (Id.) Later that day, Mr.
Rucker gave an entirely different story to Nationstar – this time stating that "he had a check for
$1MM that he made payable to his wife in Dec. 6 2013 [sic] [but that the] check is no longer
available and since they held onto the funds, they sent the check to the California Controller's
office." (Id.) Nationstar then confirmed with the California State Controller's office that the $1
million was available under Plaintiff's name. (Id.) The manager of the Controller's office

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

## Civil Division

Central District, Stanley Mosk Courthouse, Department 56

20STCV03102                                                                    June 22, 2022
MICHELE C. RIORDAN RUCKER vs MR. COOPER F/K/A                                       8:30 AM
NATIONSTAR, et al.

Judge: Honorable Holly J. Fujie              CSR: None
Judicial Assistant: O.Chavez                 ERM: None
Courtroom Assistant: B. Chavez               Deputy Sheriff: None

confirmed, however, that "even if they started the claims process now, due to the amount of the check, the process would take approx. 6 months to complete." (Id. at pp. 137-138.)

As a note, this information would indicate that Plaintiff had the ability to seek access to the money to reinstate long before the foreclosure sale but that because she took no action to obtain those funds from the California State Controller's Office in a timely manner she failed to tender the reinstatement funds. The uncontroverted evidence showed that before the foreclosure date Plaintiff was aware of the amount required to reinstate the Loan as well as of the date and time of the foreclosure sale, that the account was over 132 months delinquent and that there were no other valid grounds to stop the foreclosure sale from going forward. In short, Moving Defendant's uncontroverted evidence establishes that the allegations in Plaintiff's Complaint are unsupported by the facts.

First Cause of Action: Set Aside Foreclosure Sale

The elements of an equitable cause of action to set aside a foreclosure sale are: (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering. (Lona v. Citibank, N.A. (2011) 202 Cal.App.4th 89, 104, 134.)

As a general rule, a plaintiff may not challenge the propriety of a foreclosure on his or her property without offering to repay what he or she borrowed against the property as a valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust. (Intengan v. BAC Home Loans Servicing LP (2013) 214 Cal.App.4th 1047, 1053.) The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction. (Nguyen v. Calhoun (2003) 105 Cal.App.4th 428, 439.) In other words, with respect to tender, it is a debtor's responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect. (Id.)

Tender is excused in four circumstances. First, if the borrower's action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt. (Lona v. Citibank, N.A. (2011) 202 Cal.App.4th 89, 112.) Second, a tender will not be required

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Stanley Mosk Courthouse, Department 56

| | |
|---|---|
| 20STCV03102 | June 22, 2022 |
| MICHELE C. RIORDAN RUCKER vs MR. COOPER F/K/A | 8:30 AM |
| NATIONSTAR, et al. | |

| | |
|---|---|
| Judge: Honorable Holly J. Fujie | CSR: None |
| Judicial Assistant: O.Chavez | ERM: None |
| Courtroom Assistant: B. Chavez | Deputy Sheriff: None |

when the person who seeks to set aside the trustee's sale has a counter-claim or set-off against the beneficiary. (Id. at 113.) Third, a tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale. (Id.) Fourth, no tender will be required when the trustor is not required to rely on equity to attack the deed because the trustee's deed is void on its face. (Id.)

Moving Defendants have established by uncontroverted evidence that there are no triable issues as to the first cause of action because Plaintiff indisputably did not offer tender before the foreclosure sale. Moving Defendants' evidence established that Plaintiff failed to tender the amount Nationstar had informed her was due on July 16, 2019 in order to reinstate the Loan, and that Moving Defendants had informed Plaintiff that her allegations challenging the validity of the underlying debt were not valid. Plaintiff knew that the foreclosure sale was scheduled to occur on July 17, 2019, and she failed to make the payment which would have reinstated the Loan.

Because Moving Defendants have provided uncontroverted evidence that Plaintiff was aware that the foreclosure sale would be held on July 17, 2019, and that Plaintiff had until July 16, 2019 to reinstate the Loan and failed to do so, Moving Defendants have established that there are no triable issues of material fact as to the first cause of action. The Court therefore GRANTS the Motion as to the first cause of action.

Second and Third Causes of Action: Negligence and Intentional Misrepresentation

Although labeled negligence per se, the gravamen of the second cause of action is negligence. (See Complaint ¶¶ 28-34.) The elements of negligence are: (1) duty; (2) breach; (3) causation; and (4) damages. (Peredia v. HR Mobile Services, Inc. (2018) 25 Cal.App.5th 680, 687.) As a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. (Nymark v. Heart Fed. Savings & Loan Assn. (1991) 231 Cal.App.3d 1089, 1096.)

The elements of intentional misrepresentation as alleged in the third cause of action are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. (Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn. (2018) 19 Cal.App.5th 399, 428.)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 56

**20STCV03102**                                                                June 22, 2022
**MICHELE C. RIORDAN RUCKER vs MR. COOPER F/K/A**                          8:30 AM
**NATIONSTAR, et al.**

| | |
|---|---|
| Judge: Honorable Holly J. Fujie | CSR: None |
| Judicial Assistant: O.Chavez | ERM: None |
| Courtroom Assistant: B. Chavez | Deputy Sheriff: None |

Moving Defendants have provided uncontroverted evidence that Plaintiff failed to reinstate the Loan on July 16, 2019 – in fact repeatedly misrepresented the status of his reinstatement efforts -- despite Nationstar's having extending the date of the foreclosure sale, demonstrates that there are no triable issues of material fact as to the third cause of action for intentional misrepresentation claim.

Further, Moving Defendants have established that the conduct at issue in the Complaint does not exceed the scope of the duties of the servicer or trustee of the Loan and that Moving Defendants did not act fraudulently, nor did they breach a general duty of care. Moving Defendants have met their burden with respect to the fraud claim and with respect to the negligence claim that stems from their alleged fraudulent activities. The Court therefore GRANTS the Motion as to the second and third causes of action.

Fourth Cause of Action: Breach of Contract

The elements of a breach of contract claim are: (1) the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damage to plaintiff therefrom. (Wall Street Network, Ltd. v. New York Times Co. (2008) 164 Cal.App.4th 1171, 1178.) The statute for breach of contract claims is four years and begins on the date of the breach. (CCP § 337, subd. (a).)

The Complaint alleges that Plaintiff discovered a breach of contract on June 4, 2009. The Complaint was not filed until over four years later, on January 24, 2020. The breach of contract claim is therefore time-barred and the Court accordingly GRANTS the Motion as to the fourth cause of action.

Fifth Cause of Action: Breach of Implied Covenant of Good Faith and Fair Dealing

The fifth cause of action fails for the same reasons as the first cause of action to set aside the trustee's sale. Moving Defendants further have established by uncontroverted evidence that they did not breach the implied covenant of good faith and fair dealing because they acted within their authority under the DOT and it is undisputed that Plaintiff had defaulted on the Loan. Moving Defendants have also met their burden to show that they acted within their rights when they conducted the foreclosure sale. The Court therefore GRANTS the Motion as to the fifth cause of action.

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Stanley Mosk Courthouse, Department 56

**20STCV03102**                                                                                June 22, 2022
**MICHELE C. RIORDAN RUCKER vs MR. COOPER F/K/A**                              8:30 AM
**NATIONSTAR, et al.**

Judge: Honorable Holly J. Fujie                    CSR: None
Judicial Assistant: O.Chavez                        ERM: None
Courtroom Assistant: B. Chavez                    Deputy Sheriff: None

Sixth Cause of Action: Unfair Competition Law ("UCL")

The UCL prohibits any unlawful, unfair or fraudulent business act or practice. (Bus. & Prof.
Code § 17200; see Clark v. Superior Court (2010) 50 Cal.4th 605, 610.) To show a violation of
the UCL, a plaintiff must establish: (1) a loss or deprivation of money or property sufficient to
qualify as injury in fact, i.e., economic injury; and (2) show that that economic injury was the
result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of
the claim. (Kwikset Corp. v. Superior Court (2011) 51 Cal.4th 310, 322.)

Because Plaintiff's other claims fail, she cannot establish any UCL violations. The Court
therefore GRANTS the Motion as to the sixth cause of action.

Seventh Cause of Action: Conversion:

The elements of conversion are: (1) the plaintiff's ownership or right to possession of the
property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and
(3) damages. (Hodges v. County of Placer (2019) 41 Cal.App.5th 537, 551.) The tort of
conversion applies to personal property, not real property. (Salma v. Capon (2008) 161
Cal.App.4th 1275, 1295.) Money cannot be the subject of a cause of action for conversion unless
there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to
be paid to another and fails to make the payment. (McKell v. Washington Mutual, Inc. (2006)
142 Cal.App.4th 1457, 1491.)

The Complaint alleges that Moving Defendants exerted control over Plaintiff's money, which
resulted in the conversion of the Property and caused her to sustain damages in the amount of
$616,000. (See Complaint ¶¶ 74.) Initially, Moving Defendants have established by
uncontroverted evidence that they did not exert control over Plaintiff's money through this
transaction. Moreover, the amount of alleged money damages does not appear to correspond
with a specific amount of money that Moving Defendants allegedly mishandled. Because the
Complaint does not identify a specific sum of money or otherwise establish a claim for
conversion of real property, the Court GRANTS the Motion as to the seventh cause of action.

Moving Defendants are ordered to give notice of this ruling.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Stanley Mosk Courthouse, Department 56

**20STCV03102**                                                                June 22, 2022
**MICHELE C. RIORDAN RUCKER vs MR. COOPER F/K/A**                               8:30 AM
**NATIONSTAR, et al.**

Judge: Honorable Holly J. Fujie                    CSR: None
Judicial Assistant: O.Chavez                       ERM: None
Courtroom Assistant: B. Chavez                     Deputy Sheriff: None

Dated this 22nd day of June 2022

/s/ Holly J. Fujie
_____
Holly J. Fujie
Judge of the Superior Court

# EXHIBIT 2

**FILED**
Superior Court of California
County of Los Angeles

07/29/2022

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ O. Chavez Deputy

**FILED**
Superior Court of California
County of Los Angeles

07/29/2022

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ O. Chavez Deputy

Electronically Received 07/27/2022 11:43 AM

Electronically Received 06/07/2021 12:00 AM

Electronically Received 06/07/2021 12:00 AM

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| MICHELE C. RIORDAN RUCKER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS SUCCESSOR IN INTEREST TO JP MORGAN CHASE BANK, N.A. AS TRUSTEE FOR STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2004-ARS, ITS ASSIGNEES AND/OR SUCCESSORS; MR. COOPER F/K/A NATIONSTAR; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 20STCV03102<br><br>[Assigned for All Purposes to Hon. Holly J. Fujie; Dept. 56]<br><br>**[~~PROPOSED~~] JUDGMENT**<br><br>Complaint filed:  January 24, 2020<br>Trial date         September 20, 2021 |

1

[~~PROPOSED~~] JUDGMENT

2       Upon consideration of the pleadings, papers, and arguments of counsel, and with GOOD

3   CAUSE shown, the MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,

4   SUMMARY ADJUDICATION filed by Defendants; The Bank of New York Mellon F/K/A The

5   Bank of New York As Successor In Interest to JP Morgan Chase Bank, N.A. As Trustee for

6   Structured Asset Mortgage Investments II Inc. Mortgage Pass-Through Certificates Series 2004-

7   AR5; Nationstar Mortgage LLC dba Mr. Cooper (*erroneously sued as Mr. Cooper fka*

8   *Nationstar*); is **GRANTED**.

9       **IT IS ORDERED AND ADJUDGED** that Plaintiff Michele C. Riordan Rucker

10  ("Plaintiff") take nothing, and this action be dismissed on the merits WITH PREJUDICE, and

11  that Defendants recover their costs.

12

13      **IT IS SO ORDERED.**

14

15  Dated: _____07/29/2022_____, ~~2021~~

16

Holly J. Fujie

*Holly J. Fujie / Judge*

17

18  _____
    Honorable Holly J. Fujie
    Judge of the Superior Court

19

20

21

22

23

24

25

26

27

28

- 2 -



**This page is part of your document - DO NOT DISCARD**



## 20200175681



Pages:
0005

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**02/12/20 AT 02:25PM**

| | |
|---|---|
| FEES: | 29.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 104.00 |



**L E A D S H E E T**



202002120710025

00017876820

010517581

**SEQ:**
**01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**



E528330

JEFFREY A. HACKER, ESQ.  SBN: 97331
HACKER LAW GROUP
26650 The Old Road, Suite 201
Valencia, CA  91381
Telephone: (661) 259-6800
Facsimile: (661) 259-6836

Attorneys for Plaintiff
MICHELE C. RIORDAN RUCKER

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| MICHELE C. RIORDAN RUCKER, an individual, | Case No: 20STCV03102 |
| Plaintiff, | **NOTICE OF LIS PENDENS** |
| vs. | |
| THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS SUCCESSOR IN INTEREST TO JP MORGAN CHASE BANK, N.A. AS TRUSTEE FOR STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2004-AR5, ITS ASSIGNEES AND/OR SUCCESSORS; MR. COOPER F/K/A NATIONSTAR; and DOES 1 through 50, inclusive, | |
| Defendants. | |

  NOTICE IS HEREBY GIVEN that the above-entitled action concerning and affecting real property as described herein was commenced on January 24, 2020 in the above-named Court by Plaintiff, MICHELE C. RIORDAN RUCKER, an individual.

The above action seeks, amongst other things, partition of that certain real property that is situated in the unincorporated area of Los Angeles County, California, with a legal description as follows:

THOSE PORTIONS OF GOVERNMENT LOTS 1, 2, 7 AND 8 IN SECTION 6, TOWNSHIP 2 NORTH, RANGE 16 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF FILED IN THE DISTRICT LAND OFFICE ON OCTOBER 9, 1896, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTH QUARTER CORNER OF SAID SECTION 6, AS SAID QUARTER CORNER IS SHOWN ON THOSE CERTAIN RECORDS OF SURVEY FILED IN BOOK 127, PAGE 49 AND IN BOOK 137, PAGES 55 TO 61 INCLUSIVE OF RECORD OF SURVEY, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE ALONG THE NORTH LINE OF SAID SECTION 6, PER SAID RECORD OF SURVEY FILED IN SAID BOOK 137, PAGES 55 TO 61, INCLUSIVE, SOUTH 89° 54' 32" EAST 1209.73 FEET TO THE NORTHERLY PROLONGATION OF THAT CERTAIN LINE SHOWN ON SAID RECORD OF SURVEY FILED IN SAID BOOK 127, PAGE 49, AS HAVING A BEARING OF NORTH 01° 23' 53" EAST, AND A DISTANCE OF 2636.99 FEET, SAID LINE ALSO BEING SHOWN ON SAID RECORD OF SURVEY FILED IN BOOK 137, PAGES 55 TO 61 INCLUSIVE AS HAVING A BEARING OF NORTH 01° 34' 14" EAST; THENCE ALONG SAID PROLONGATION SOUTH 01° 34' 14" WEST 28.62 FEET TO THE NORTHERLY TERMINUS OF LAST SAID LINE; THENCE ALONG SAID LINE SOUTH 01° 34' 14" WEST 1018.18 FEET TO A LINE PARALLEL WITH AND NORTHERLY 300.00 FEET, MEASURED AT RIGHT ANGLES, FROM THE LINE SHOWN ON SAID RECORD OF SURVEY FILED IN BOOK 127, PAGE 49 AS HAVING A BEARING OF NORTH 89° 11' 47" WEST, AND A DISTANCE OF 406.20 FEET, SAID LINE IS ALSO SHOWN ON SAID RECORD OF SURVEY FILED IN BOOK 137, PAGES 55 TO 61 INCLUSIVE, AS

1   HAVING A BEARING OF NORTH 89° 01' 26" WEST, AND A DISTANCE OF

2   447.48 FEET, AND THE TRUE POINT OF BEGINNING; THENCE SOUTH 01° 34'

3   14" WEST 300.02 FEET TO SAID LINE SHOWN ON SAID RECORD OF SURVEY

4   FILED IN BOOK 127, PAGE 49, AS HAVING A BEARING OF NORTH 89° 11' 47"

5   WEST AND A DISTANCE OF 406.20 FEET; THENCE ALONG LAST SAID LINE

6   SOUTH 89° 01' 26" EAST, 447.48 FEET TO THE CENTER LINE OF THAT

7   CERTAIN 30.00 FOOT STRIP OF LAND DESIGNATED AS PARCEL C 305 EAST,

8   IN CASE NO. 20776 CIVIL UNITED STATES DISTRICT COURT, NOTICE OF THE

9   PENDENCY OF SAID ACTION WAS RECORDED NOVEMBER 30, 1956 IN BOOK

10  52997, PAGE 101 OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY

11  RECORDER OF SAID COUNTY, SAID CENTER LINE IS SHOWN ON SAID

12  RECORD OF SURVEY FILED IN BOOK 137, PAGES 55 TO 61 INCLUSIVE OF

13  RECORDS OF SURVEY; THENCE ALONG SAID CENTER LINE NORTH 18° 24'

14  01" EAST 109.79 FEET; THENCE NORTH 12° 37' 54" WEST 149.40 FEET; THENCE

15  NORTH 19° 28' 20" EAST 52.77 FEET TO SAID PARALLEL LINE; THENCE

16  ALONG SAID PARALLEL LINE NORTH 89° 01' 26" WEST 458.83 FEET TO THE

17  TRUE POINT OF BEGINNING, AS DESIGNATED IN CASE NO. C 721593

18  SUPERIOR COURT OF THE STATE OF CALIFORNIA, RECORDED DECEMBER

19  29, 1995 AS INSTRUMENT NO. 95-2069725, OFFICIAL RECORDS.

20  DATED: February 4, 2020                     HACKER LAW GROUP

21                                              BY:

22                                              JEFFREY A. HACKER
                                                Attorney for Plaintiff
23                                              MICHELE C. RIORDAN RUCKER

**CALIFORNIA ACKNOWLEDGMENT**                                CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Los Angeles_ }

On _February 4th 2020_ before me, _Rosa M. Sandoval Notary Public_
    Date                                             Here Insert Name and Title of the Officer

personally appeared _Jeffrey A. Hacker_
                                              Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

ROSA M. SANDOVAL
Notary Public - California
Los Angeles County
Commission # 2280123
My Comm. Expires Mar 9, 2023

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                                    Signature of Notary Public

*Place Notary Seal and/or Stamp Above*

──────────── **OPTIONAL** ────────────

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _Notice of Lis Pendens_

Document Date: _February 4th 2020_ _____ Number of Pages: _3_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer – Title(s): _____ | ☐ Corporate Officer – Title(s): _____ |
| ☐ Partner – ☐ Limited ☐ General | ☐ Partner – ☐ Limited ☐ General |
| ☐ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer is Representing: _____ | Signer is Representing: _____ |

©2019 National Notary Association

Electronically FILED by Superior Court of California, County of Los Angeles on 01/24/2020 01:16 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton,Deputy Clerk
Assembled as purpose of this pleading and the incidental Bank of NY Holding

JEFFREY A. HACKER, ESQ.  SBN: 97331
HACKER LAW GROUP
26650 The Old Road, Suite 201
Valencia, CA  91381
Telephone: (661) 259-6800
Facsimile: (661) 259-6836

Attorneys for Plaintiff
MICHELE C. RIORDAN RUCKER

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| MICHELE C. RIORDAN RUCKER, an individual,<br><br>                         Plaintiff,<br><br>        vs.<br><br>THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS SUCCESSOR IN INTEREST TO JP MORGAN CHASE BANK, N.A. AS TRUSTEE FOR STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2004-AR5, ITS ASSIGNEES AND/OR SUCCESSORS; MR. COOPER F/K/A NATIONSTAR; and DOES 1 through 50, inclusive,<br><br>                         Defendants. | Case No:<br><br>**PLAINTIFF'S VERIFIED COMPLAINT FOR:**<br><br>**(1) SETTING ASIDE THE FORECLOSURE SALE;**<br>**(2) NEGLIGENCE PER SE;**<br>**(3) INTENTIONAL MISREPRESENTATION;**<br>**(4) BREACH OF CONTRACT;**<br>**(5) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>**(6) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200 *ET SEQ.*; AND**<br>**(7) CONVERSION.** |

Plaintiff, MICHELE C. RIORDAN RUCKER, an individual, alleges as follows:

1.      At all times here mentioned, Plaintiff was a resident of Los Angeles County, California and the owner of 12017 Browns Canyon Road, Chatsworth, California 91311.

2.      Plaintiff has resided in the property continuously since it was purchased in 2004.

3.      At all times herein mentioned Plaintiff is informed and believes that Defendant is a successor by merger to BAC Home Loans Servicing, LP and Countrywide Mortgage ("Bank")

is a mortgage lender and servicer with headquarters in Charlotte, North Carolina and is currently

licensed and authorized to transact business in the State of California.

4.      Defendant Mr. Cooper, Inc., fka Nationstar ("Cooper"), is a California

Corporation with its principal place of business in California.

5.      Plaintiff does not know the true names and capacities of the Defendants sued

herein as Does 1 through 50, inclusive, and therefore sue said DOE Defendants by such

fictitious names.  Plaintiff is informed and believes and based thereon allege that each of the

DOE Defendants is legally responsible in some manner for the acts and omissions described

herein.  Plaintiff will amend this Complaint to set forth the true names and capacities of each

fictitiously named Defendants where such has been associated.

6.      Plaintiff is informed and believes and based thereon alleges that Defendants, and

each of them, at all times herein mentioned were the agents, servants, employees or

representatives of each other acting within the scope of said relationship.

7.      Each of the Defendants are alleged to have been acting in concert in some manner

with each of the other Defendants and are therefore alleged to be jointly and severally liable for

the claims set forth herein.

## **NATURE OF THE ACTION**

8.      Plaintiff was deprived of her reinstatement rights prior to foreclosure. Plaintiff

had the available funds, despite not being provided her statutory reinstatement notice, tried to

pay Defendants, has witnesses to such, yet Defendants refused to accept said funds.  Plaintiff

believes her damages are the direct and proximate result of the systematic, calculated, illegal and

unfair business practices of the Bank.

9.      Plaintiff was not provided with the amount due for reinstatement timely.  This

action stems from a decades long dispute with Defendants and its predecessors regarding the

amount of the first and second trust deeds originated by Countrywide when the house was

purchased.

10.      Sometime in or about 2008, Bank of America became the successor to

Countrywide at the time when Plaintiff was in the process of a loan modification with the Bank.

Plaintiff was promised a single point of contact ("SPOC") which did not occur. Defendant

Nationstar became the successor in interest to Bank of America sometime in 2013.  Plaintiff

PLAINTIFF'S COMPLAINT

repeatedly asked for a Single Point of Contact ("SPOC") for approximately twelve (12) years but never accommodated.

11.    Prior to the filing of this case, as set forth below, Plaintiff spent years with the Bank trying to resolve the very problems the Bank had been responsible for creating. Plaintiff requested contact information, accountings, tried to make payments, requested improper charges to this monthly mortgage payment cease, requested accountings of the Bank's self-created impound account for payment of insurance and property taxes that Defendants did not pay and self-fulfilling prophecies, requested reversal of the improper default(s), requested the Bank refrain from instituting or proceeding with the foreclosure of her home, requested the Bank cease from making her property tax payments, and requested to have the Bank correct the improper credit reporting.

12.    Plaintiff never received a notice of default instituting foreclosure proceedings in 2019. Plaintiff believes that she received a Notice of Default in 2008. Plaintiff does not recall receiving another or separate Notice of Default in 2018 or 2019 ("NOD"). Plaintiff has had a long-standing and simmering dispute with Defendants, and each of them, regarding whether property taxes were paid from the impound account, whether Countrywide paid insurance for the property as required under the Loan documents. As a result, Plaintiff was improperly charged with improper payments, requested multiple accountings, and then Defendants insisted Plaintiff was in default, when she wasn't. improperly triggering default interest and other default provisions of the loan documents.

13.    For a decade, Plaintiff tried to get an accurate accounting and get the errors corrected, without success. Plaintiff believes this triggered the aforesaid Notice of Default which was continuously postponed for years. Plaintiff does not recall receiving the reissuance of a new NOD. Plaintiff believes that RECON TRUST, and not her, was served with documents, even though Defendants knew Plaintiff's address and Plaintiff occupied the property which is the subject of the loan. Plaintiff believes the Los Angeles County Tax Assessor was also sending notifications to RECON TRUST and not Plaintiff. Plaintiff did not authorize RECON TRUST to act on her behalf nor did she assign her right, title, or interest in the property to them. Plaintiff never provided a change of address to RECON TRUST or notified the Defendants to send notices or mail concerning the property to RECON TRUST. Plaintiff does not know how it

PLAINTIFF'S COMPLAINT

came to pass that RECON TRUST was receiving notices or mail pertaining to the property for Plaintiff.

14.     Plaintiff's husband, SCOTT RUCKER, recognized something was not right. For a period of years, he was pro-active to find out what was going on with the property, obtain pay-off amounts, accurate amounts of what was due and owing, obtain a single point of contact, reverse over and improper charges, and other matters. Plaintiff and her husband understood the sale (foreclosure) of the property kept getting postponed so that Defendants could provide Plaintiff with an accurate pay-off or reinstatement amount. This went on for years. The court should keep in mind that even during this period, Plaintiff paid off a purchase money second deed of trust with Bank of America in the amount of $250,000.

15.     One of the issues concerns an insurance check paid to Plaintiff and Bank of America in or about 2011 in the amount of $181,000 payable to Bank of America and Plaintiff for damages from a 2008 Seson fire in Chatsworth. Those funds were never accounted for or applied to the loan to date. This topic has also been the subject to disagreement between the parties.

16.     This went on for years. In June, 2019 SCOTT RUCKER was told by Defendant MR. COOPER when he called for an update that Trustee's Sale was scheduled for July 17, 2019. RUCKER was shocked. RUCKER asked how could this happen, whether a new NOD had been recorded, and what about all of the information that had been previously and repeatedly requested. Defendant MR. COOPER stated words to the effect of: We've addressed your concerns and provided no additional information. RUCKER disagreed but could not obtain the information he sought. RUCKER also requested how much was owing and what the precise amount was owed to bring the loan current (i.e. reinstatement).

17.     Neither Plaintiff nor RUCKER were provided with the reinstatement amount, despite repeated demands, until July 15, 2019, less than 48 hours before the scheduled sale. MR. COOPER initially told RUCKER the amount owing was $539,169.52. Plaintiff had the funds available and made arrangements to go to Wells Fargo Bank, Chatsworth branch, to wire funds to MR. COOPER. Wells Fargo's branch manager verified that Plaintiff had the funds in the form a cashier's check but the check was stale and had to be reissued. However, MR. COOPER then claimed that only $409,807.52 was actually owing but could not explain the discrepancy or

provide documentation. Plaintiff requested additional time to reinstate the loan because of the less than 24-hour notice and incorrect amounts but was denied additional time.

18.    The Notice of Default was set to expire on July 17, 2019. However, on June 4, 2019, Plaintiff was informed in writing by Mr. Cooper the foreclosure proceeding was on hold as of June 4, 2019. Plaintiff immediately and repeatedly asked for a reinstatement quote that was finally provided to Plaintiff and her husband on July 15, 2019, two days before the foreclosure sale. Plaintiff then discovered on or about July 15, 2019 that these representations were untrue and the sale was scheduled for less than 48 hours later on July 17, 2019. The reinstatement amount was represented to be $539,169.52, which was incorrect.  The correct amount was $409,807.52.

19.    On or about July 15, 2019, Plaintiff went to the Bank, Wells Fargo Bank, to transfer the money.  Defendants would not accept the funds.  As a result, the foreclosure occurred and Plaintiff lost her home.

## FIRST CAUSE OF ACTION

### (Setting Aside the Foreclosure Sale)

20.    Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 19, inclusive, as though fully set forth herein.

21.    Plaintiff has had a long-standing dispute regarding the loan on the subject property with the Defendants as set forth above.

22.    Upon oral notification of the sale date, Plaintiff frantically tried to contact Defendant Mr. Cooper repeatedly regarding a reinstatement quote or an accounting.  Despite her repeated and incessant requests, Defendant Mr. Cooper did not provide a reinstatement amount until July 15, 2019, one day prior to foreclosure.  The actual reinstatement amount was $409,807.52 but Plaintiff was told the amount was $539,169.52.  Plaintiff was going to reserve her rights to dispute the difference but made arrangements to pay the $539,669.52.  However, Defendants refused to accept her payment.

23.    As a direct and proximate result, the foreclosure sale went forward and the property was purchased by a credit bid of $725,000, when the true reinstatement amount was $409,807.52.

24.    Defendants, and each of them, wrongfully foreclosed on Plaintiff's property by:

(1)    Failing to provide an accurate accounting of monies due;

(2)    Refusing to accept funds from Plaintiff to reinstate the loan and cure any disputed arrearage;

(3)    Refusing to allow Plaintiff to assert her reinstatement rights prior to the foreclosure sale and per State regulations and status;

(4)    Violating applicable laws;

(5)    Failed to provide the requisite notices required by law and due process;

(6)    Failing to obtain a valid assignment of the mortgage;

(7)    Failing to follow the terms provided for in the loan documents and Deed of Trust; and

(8)    Other presently unknown facts.

25.    As a direct and proximate result of Defendants and each of their conduct, Defendants wrongfully foreclosed and took Plaintiff's property.  Defendants refuse to vacate the foreclosure or reinstate the loan.

26.    As a direct result of Defendants and each of their conduct, Plaintiff has sustained general and special damages according to proof.

27.    Plaintiff requests a court order vacating and setting aside the foreclosure sale, reinstating the loan, and have title to the property reinstated to Plaintiffs.

**SECOND CAUSE OF ACTION FOR NEGLIGENCE PER SE**

**(Against All Defendants)**

28.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 27, inclusive, as though fully set forth herein.

29.    At all times herein mentioned, the Defendants, and each of them, owed Plaintiff a duty of due care to follow and abide by all of the terms and conditions of the Promissory Note and Deed of Trust.

30.    At all times relevant herein, the Defendants, and each of them acting as Plaintiff's lender and loan servicer, also had a duty to exercise reasonable care and skill to maintain proper and accurate loan records, not to commence or misrepresent the status of a foreclosure, to abide by  the California's Homeowner's Bill of Rights including, but not limited to, Civil Code sections 2923.5(a); 2923.6 (c); 2924.18, 2920.5(b), 2923.7, and 2923.5 provide a single point of

contact familiar with Plaintiff's account so that Plaintiff could avoid foreclosure and rectify an error on her account, not "dual track", and the failure to provide Plaintiff within five (5) business days of the NOD with a writing detailing Plaintiff's foreclosure avoidance alternatives, violating Civil Code Section 1695, et seq., by unconscionably taking advantage of Plaintiff during this foreclosure process, failed to initiate and pursue a series of notification and consultation processes as required by law, and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited, accurate crediting of payments made by Plaintiff.

31.    In taking the actions alleged above, and in failing to take the actions as alleged above and by instituting foreclosure proceedings without providing Plaintiff with the requisite written notice and an opportunity to cure the purported default, the Defendants, and each of them breached their duty of care and skill to Plaintiff in the servicing of Plaintiff's loan by, among other things, failing to give Plaintiff notice of the purported default in property taxes before Defendants paid them, failing to properly and accurately credit payments made by Plaintiff toward the loan, charging Plaintiff excessive fees and charges incurred solely as a result of Defendants' conduct, complying with various section of California's Homeowner Bill of Rights statutes including those alleged hereinabove, preparing and filing incorrect or false documents, and foreclosing on the Subject Property without having the legal authority and/or proper documentation to do so or providing Plaintiff with foreclosure avoidance alternatives. Plaintiff was at all times a member of the class to which the above statutes were designed to protect.

32.    As a direct and proximate result of the negligence and carelessness of the foreclosing Defendants, and each of them as set forth above, Plaintiff suffered general and special damages in an amount to be determined at trial.

33.    Plaintiffs retained counsel to represent her in connection with the defense of the foreclosure process which had been commenced by the Defendants.

34.    As a direct and proximate result of the negligence and carelessness of Defendants as set forth above, Plaintiff wasted several critical months which could have been used to stop the foreclosure of her property through negotiation or legal action resulting in general and special damages to Plaintiff in an amount to be determined at trial.

## THIRD CAUSE OF ACTION FOR INTENTIONAL MISPRESENTATION

### (Against All Defendants)

35.    Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 35, inclusive, as though fully set forth herein.

36.    As set forth above, Defendants orally represented to Plaintiff that a new NOD had not been recorded, the Trustee's Sale was on hold, that the loan could be reinstated at any time prior to sale; and that Defendants would accept as payment the cashier's check Plaintiff had.

37.    This was untrue. Defendants had, apparently, recorded a NOD, did not notify Plaintiff, did not stay or stop the sale, did not give Plaintiff a reinstatement amount until less than 48 hours prior to the sale and even then, it was in the wrong amount, and refused to accept payment.

38.    To summarize, Defendant should not have proceeded with the foreclosure and/or allow Plaintiff to reinstate the loan.

39.    Plaintiff is informed and believes and based thereon alleges that the Defendants and each of them engaged in these intentional misrepresentations in a systematic pattern and practice of defrauding Plaintiff so that excessive fees could be charged, her monthly payments could be diverted from payment of the loan and ultimately her house would be lost to foreclosure.

40.    The Defendants and each of them had actual knowledge that the requisite written notice was not provided to Plaintiff and, as a direct and proximate result, Plaintiff's account was inaccurate and that the Defendants and each of them would use their fraudulent conduct to cause the default and thereafter foreclose on the Subject Property, which had substantial equity, to charge and recover excessive fees, improper charges and interest. Plaintiff made payments and provided proof of the payments based on the improper, inaccurate, and fraudulent representations to her account to Defendants. Defendants refused to accept payments or accurately credit her account. The Defendants and each of them, also intentionally utilized amounts known to the Defendants to be inaccurate to determine the amount allegedly due and owing for purposes of foreclosure.

41.     Additionally, the Defendants and each of them concealed material facts known to them, such as but not limited to, their practice of charging excessive fees and improper charges but not to Plaintiff regarding payments, notices, assignments, transfers, late fees and charges with the intent to defraud Plaintiff. This information was intentionally concealed from Plaintiff as alleged hereinabove.

42.     The Defendants and each of them intentionally made the above-referenced false representations, concealments and non-disclosures with knowledge of the falsity of their misrepresentations, intending to induce Plaintiff's reliance, which the Plaintiff justifiably relied upon, resulting in Plaintiff losing the property and any equity therein,  damage to Plaintiff's credit standing, costs,  and other damage all in an amount according to proof.

43.     As a result of the Defendants and their agents and each of their fraudulent conduct, as alleged hereinabove, Plaintiffs has suffered compensatory, general and special damages in an amount to proof. Additionally, all of the Defendants acted with malice, fraud and/or oppression and, thus, Plaintiff is entitled to an award of punitive damages.

44.     Defendants concealed the true facts for the purpose of defrauding Plaintiff and trying to take her home.

45.     Defendants and their authorized agents as detailed hereinabove made the above-referenced false representations, concealments and non-disclosures with knowledge of the misrepresentations, intending to induce Plaintiff's reliance, which Plaintiff justifiably relied upon, resulting in general and special damages as well as the potential loss of the Subject Property. Plaintiff was unaware of the true facts. Had Plaintiff known the true facts, Plaintiff would not have used Defendants as her lender, servicer, and trustee and would not have paid Defendants anything.

46.     As a result of Defendants fraudulent conduct, Plaintiff has suffered compensatory, general and special damages in an amount according to proof at trial. Additionally, Defendants, and each of them, acted with malice, fraud and/or oppression and, thus, Plaintiff is entitled to an award of punitive damages in an amount sufficient to deter and punish Defendants, and each of them.

///

///

PLAINTIFF'S COMPLAINT

## FOURTH CAUSE OF ACTION FOR BREACH OF CONTRACT

### (Against All Defendants)

47.    Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 46 inclusive, as though fully set forth herein.

48.    On or about June 30, 2004 Plaintiff entered into the written Note and corresponding Deed of Trust with Defendants' predecessor in interest, Countrywide Home Loans in the principle amount of $725,000. A true and correct copy of the Note is attached hereto as Exhibit "A". Defendants, and each of them, breached the Note and Deed of Trust by failing to properly account for Plaintiff's payments, failing to pay insurance, failing to provide Notices to Plaintiff at her address in the Note, claiming improper charges, and refusing to accept payments from Plaintiff, among other things.

49.    On or about June 04, 2009, Plaintiff discovered, Defendants breached the written Note and Deed of Trust by failing to provide any written notice of breach or default to Plaintiff, even though disputed at the time and which did not constitute the lien. Thereby Defendant had no right to make this payment or declare a breach or default and breached the terms of the Note and Deed of Trust. The terms of the Note and Deed of Trust also required payments made by Plaintiff to be applied properly to Plaintiff's account.  The Defendants also breached the Note and Deed of Trust by failing to apply the payments made by Plaintiff to Plaintiff's loan, the result of which led to the Defendants eventually attempting to foreclose on the Subject Property.

50.    At all times herein mentioned Plaintiff performed all terms and conditions of the Note and Deed of Trust unless excused, waived, or otherwise prevented from doing so by Defendants, and each of them.

51.    As a proximate result of Defendants' breaches, Plaintiff has suffered compensatory damages in an amount of not less than Two Million Thousand Dollars ($2,000,000) or according to proof at trial. Plaintiff is also entitled to incidental and consequential damages in an amount according to proof.

52.    As a further direct and proximate result of Defendants' breaches of the Note and Deed of Trust, Plaintiff is entitled to reasonable attorney fees.

///

///

# FIFTH CAUSE OF ACTION FOR

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against all Defendants)

53.    Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 52, inclusive, as though fully set forth herein.

54.    Plaintiff is informed and believes and based thereon alleges that the terms and conditions of the Note and Deed of Trust contractually obligated Defendants to abide by the terms and conditions of the Note and Deed of Trust and act fairly, reasonably, and in good faith. As alleged hereinabove, the express terms of the Note and Deed of Trust required written notification to Plaintiff prior to the payment of the property taxes. Plaintiff believes the reasoning for this requirement is to provide her and other similarly situated borrowers with notice, an opportunity to cure any purported default or breach, or contest any disputed charge. In this case, Plaintiff was not provided with any written notification before the disputed property taxes were paid thus setting off the chain of events alleged hereinabove.

55.    Every contract and the Note and Deed of Trust, imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

56.    At all times herein mentioned, the Defendants did not act in good faith and did not deal fairly with Plaintiff in connection with the note and deed of trust when they did not give proper Notice to Plaintiff as alleged herein and refused to properly apply payments to Plaintiff's loan and thereafter are attempting to foreclose on the Subject Property even though Plaintiff provided proof of payments and thereafter refused to resolve the mistake with Plaintiff in an equitable fashion or in accordance with the Note and Deed of Trust.

57.    The Defendants enjoyed substantial discretionary and disparate power affecting the rights of Plaintiff during the events alleged in this Complaint. They were required to exercise

PLAINTIFF'S COMPLAINT

such power in good faith.

58.     The Defendants engaged in such conduct to drive Plaintiff into foreclosure so that they could acquire the Subject Property with its large equity at a bargain basement price. These actions were a bad faith breach of the contract between Plaintiff and the Defendants which show that they had no intention of performing the contract, consisting of the original note and deed of trust, in good faith.

59.     Defendants willfully breached their implied covenant of good faith and fair dealing with Plaintiff when it did not provide notice of default and its intention to pay the disputed property taxes to Plaintiff and thereafter, refused to accept Plaintiff's offer of repayment of the mistaken advancements and therefore correct its mistake, wrongfully imposed fees and charges, created an impound account, and  then allowed their alleged agent to execute the Assignment of the Deed of Trust in order to appoint a new Trustee to begin foreclosure on the Subject Property.

60.     As a result of the Defendants' breaches of this covenant, Plaintiff has suffered general and special damages in an amount of Two Million Dollars ($2,000,000) or according to proof at time of trial.

61.     At all times herein mentioned, Defendants conduct was willful, malicious, wanton, intentional, reckless, and in a conscious disregard for the rights of Plaintiff thereby justifying the imposition of punitive damages in an amount sufficient to deter and punish Defendants for future like conduct.

## SIXTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200 ET SEQ.

### (Against all Defendants)

62.     Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 61, inclusive, as though fully set forth herein.

63.     California Business & Professions Code Section 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conducts which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

64.     As more fully described above, the Foreclosing Defendants' acts and practices in violating the various sections of HBOR (as set forth in paragraph 75 above, and in committing

1  the fraudulent acts alleged hereinabove are likely to deceive, constituting a fraudulent business

2  act or practice. This conduct is ongoing and continues to this date.

3      65.    Defendants intentionally paid Plaintiff's property taxes knowing no notification

4  had been given as required under the Note and Deed of Trust and that the property taxes did not

5  constitute a "lien" against the property jeopardizing Defendant's security interest in Plaintiff's

6  property. Plaintiff was not given an opportunity to cure the alleged arrearage or otherwise

7  protect the Lender's Security Interest in accordance with section 4 of the Deed of Trust. Yet,

8  Defendants advanced the taxes with the intention of charging Plaintiff unreasonable and

9  excessive fees and to foreclose on Plaintiff's property knowing there was a million dollars in

10 equity all in violation of the Truth in Lending Law (TILA) and Home Ownership and Protection

11 Act (HOEPA). Further, Defendants' actions and practices violate California Financial Code

12 section 4973(D) which states: "A covered loan will not impose the prepayment fee or penalty if

13 the covered loan is accelerated as a result of default". Furthermore, under section 4973 (h) (1)

14 "A covered loan shall not contain a call provision that permits the lender, in its sole discretion,

15 to accelerate the indebtedness. This prohibition does not apply if repayment of the loan has been

16 accelerated in accordance with the terms of the loan documents (1) as a result of the consumer s

17 default, (2) pursuant to a due-on-sale provision, or (3) due to fraud or material misrepresentation

18 by a consumer in connection with the loan or the value of the security for the loan."

19     66.    Defendants and each of them engaged in these deceptive business practices by

20 (a) Assessing improper or excessive late fees; (b) Improperly characterizing customers' accounts

21 as being in default or delinquent status to generate unwarranted fees; (c) Instituting improper or

22 premature foreclosure proceedings to generate unwarranted fees; (d) Misapplying or failing to

23 apply customer and Plaintiff's payments; (e) Failing to provide adequate monthly statement

24 information to customers regarding the status of their accounts, payments owed, and/or basis for

25 fees assessed; (f) Seeking to collect, and collecting, various improper fees, costs and charges,

26 that are either not legally due under the mortgage contract or California law, or that are in excess

27 of amounts legally due; (g) Mishandling borrowers' mortgage payments and failing to timely or

28 properly credit payments received, resulting in late charges, delinquencies or default; (h)

Treating borrower as in default on his loans even though the borrowers have tendered timely and

sufficient payments or have otherwise complied with mortgage requirements or California law;

(i) Failing to disclose the fees, costs and charges allowable under the mortgage contract; (j) Ignoring grace periods; (k) Executing and recording false and misleading documents; (l) Acting as beneficiaries and trustees without the legal authority to do so, and (m) failing to provide required written notice before making payments on behalf of Plaintiff.

67.     The Defendants fail to act in good faith as they take fees for services but do not render them competently and in compliance with applicable law.

68.     Moreover, the Defendants engage in a uniform pattern and practice of unfair and overly-aggressive servicing that result in the assessment of unwarranted and unfair fees against California consumers, and premature default often resulting in unfair and illegal foreclosure proceedings. The scheme implemented by the Defendants is designed to defraud California consumers and enrich the Defendants.

69.     The foregoing acts and practices have caused substantial harm to California Consumers and Plaintiff by Plaintiff being charged excessive fees, Defendants creating an escrow account; and refusing to accept Plaintiff's payments or accept a lump sum payment to reimburse Defendants for the advanced property taxes.

70.     As a direct and proximate cause of the unlawful, unfair and fraudulent acts and practices of the Defendants, Plaintiff and California consumers have suffered and will continue to suffer damages in the form of unfair and unwarranted late fees and other improper fees and charges.

71.     By reason of the foregoing, the Defendants have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to California Business & Professions Code Sections 17203 and 17204. Additionally, Plaintiffs is therefore entitled to injunctive relief and attorney's fees as available under California Business and Professions Code Sec. 17200 and related sections.

<u>**SEVENTH CAUSE OF ACTION FOR CONVERSION**</u>

**(Against all Defendants)**

72.     Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 71, inclusive, as though fully set forth herein.

73.     As the foregoing indicates, Defendants, and each of them, obtained and exerted

complete dominion and control over monies due and owing to Plaintiff as more specifically described hereinabove.

74.    As a direct and proximate result of Defendants', and each of their, conversion of the above-mentioned property, Plaintiff has sustained damages in the sum of $616,000.00 and according to proof together with interest thereon at the prevailing legal rate from June 04, 2019 until judgment.

75.    In doing the acts herein alleged, Defendants, and each of them, acted with oppression, fraud and malice and Defendants' actions of conversion thereby entitle Plaintiff to punitive damages in a sum sufficient to deter and punish Defendants.

76.    Plaintiff is entitled to the return of the monies as title and ownership cannot and did not pass to Defendants.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against the Defendants and each of them, jointly and severally, as follows:

## <u>AS TO ALL CAUSES OF ACTION</u>

1.    For a determination that the foreclosure of Plaintiff's residence was wrongful and an order vacating and setting aside the foreclosure sale of Plaintiff's property.

2.    For an Order confirming the cancellation of the Trustee's Deed upon Sale concerning Plaintiff's residence and the Notice of Default relating thereto;

3.    For compensatory, special, and general damages in the amount of $750,000 or according to proof;

4.    For incidental and consequential damages in an amount according to proof;

5.    For damages to Plaintiff's creditworthiness and rating and to Plaintiff's title in an amount according to proof;

6.    Pursuant to Business and Professions Code § 17203, that all Defendants, their successors, agents, representatives, employees, and all persons who act in concert with them be permanently enjoined from committing any acts of unfair competition in violation of § 17200, including, but not limited to, the violations alleged herein.

7.    Pursuant to Business and Professions Code section 17200, et seq. for civil penalties pursuant to statute, restitution, injunctive relief and reasonable attorneys' fees in an

PLAINTIFF'S COMPLAINT

amount according to proof.

8.   For an accurate accounting of Plaintiff's account(s) with Defendants and each of them.

9.   For reasonable attorney fees in an amount according to proof and by statute.

10.   For such other and further relief as the court deems just and proper.

**AS TO THE SECOND, FOURTH, FIFTH, AND SIXTH CAUSES OF ACTION**

11.   For punitive damages in an amount sufficient to punish and deter Defendants.


DATED:  January 24, 2020                        HACKER LAW GROUP


                                                BY:_____
                                                JEFFREY A. HACKER
                                                Attorney for Plaintiff
                                                MICHELE C. RIORDAN RUCKER

PLAINTIFF'S COMPLAINT

# EXHIBIT "A"

(Page 1 of 4)

Copy

Prepared by: MELISSA VARGAS

LOAN #: 63755316

## InterestOnly<sup>SM</sup> ADJUSTABLE RATE NOTE
(6-Month LIBOR Index (As Published in *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| JUNE 30, 2004 | LOS ANGELES | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

12017 BROWNS CANYON ROAD, CHATSWORTH, CA 91311
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S. $ 725,000.00       (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.
   I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
   Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   3.875   %. The interest rate I will pay may change in accordance with Section 4 of this Note.
   The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**
   **(A) Time and Place of Payments**
   I will make a payment on the   first   day of every month, beginning on   SEPTEMBER 01, 2004   . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
   I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on   AUGUST 01, 2034   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.
   **(B) Amount of My Initial Monthly Payments**
   (i) My initial monthly payment will be in the amount of U.S. $ 2,341.15     , and (ii) there after until the First Principal and Interest Payment Due Date it will be in an amount sufficient to repay the interest only at the rate determined in Section 4 of this Note, and (iii) then on and after the First Principal and Interest Payment Due Date, it will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.
   **(C) Monthly Payment Changes**
   Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

Initials: 



(Page 2 of 4)

Copy

LOAN #: 63755316

## 4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The interest rate I will pay will change on the **first**                     day of February,  2005 , and on that day every **sixth**              month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my adjustable interest rate will be based on an index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding **ONE & SEVEN-EIGHTHS**                 percentage points (   1.875 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to (i) pay the accruing monthly interest at my new interest rate for all payments prior to the First Principal and Interest Payment Due Date, or (ii) repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments for all payments prior to the First Principal and Interest Payment Due Date. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
My interest rate will never be greater than     12.000  % or less than      1.875 %.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**
The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after  08/01/2014              .

## 5.   BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist of only interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.   BORROWER'S FAILURE TO PAY AS REQUIRED
**(A) Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN            calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000  % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(Page 3 of 4)

Copy

LOAN #: 63755316

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**(A)** Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B)** When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials

(Page 4 of 4)

Copy

LOAN #: 63755316

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MICHELLE C. RIORDAN  RUCKER          -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

[Sign Original Only]

PAY TO THE ORDER OF
JPMorgan Chase Bank, as Trustee
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC
BY _____
David A. Spector
Managing Director